**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARSON OPTICAL, INC. )<br><br>Plaintiff, )<br><br>vs. )<br><br>TELEBRANDS CORPORATION, and )<br>WALLET LIGHT USA, LLC )<br>Defendants. )<br>) | CIVIL ACTION NO.<br>07-CV-8020 (SCR) |

## <u>PLAINTIFF CARSON OPTICAL, INC.'S OPENING CLAIM CONSTRUCTION BRIEF</u>

John R. Horvack, Jr.
Fatima Lahnin
195 Church Street, 18th Floor
New Haven, Connecticut  06509-1950
Tel: (203) 777-5501
Fax: (203) 784-3199
jhorvack@carmodylaw.com
flahnin@carmodylaw.com

*Attorneys for Plaintiff
Carson Optical, Inc.*

## TABLE OF CONTENTS

                                                                                              **Page**

I.     INTRODUCTION ................................................................     1

II.    LEGAL STANDARD ........................................................     1

III.   PROPOSED CONTRUCTIONS ........................................     4

       A.    Commercial card-sized ...........................................     4

             1. Language of Claims

                   a)   The common and ordinary meaning of "commercial
                        card-sized" should be adopted by this Court. ...............     4

                   b)   The dependent claims of the '232 Patent confirm that
                        "commercial card-sized" is the size of a credit or
                        debit card. ...............................................     8

                   c)   While the specifications of the '232 Patent confirms
                        that "commercial card-sized" is the size of a credit or
                        debt card, the specification provides no size dimensions
                        for the depth of the device. ..............................     9

                   d)   As a result of the ambiguity, one skilled in the art would
                        resort to extrinsic evidence for the size of the depth
                        dimension of the device. .................................    10

       B.    Chassis .............................................................    11

       C.    Carried by .........................................................    12

IV.    IF THE COURT DOES NOT DEFINE "THIN" BY THE OBJECTIVE
       STANDARD PROMULGATED BY ISO, THEN THE SUBJECTIVE
       TERM "THIN" WOULD RENDER THE CLAIM INVALID FOR
       INDEFENITNESS UNDER 35 U.S.C. §112, ¶ 2 ..........................    13

{N0788588}                                   i

<u>Page</u>

V.    TELEBRANDS' PROPOSED CONSTRUCTION OF THE
      TERM "COMMERCIAL-CARD SIZED" IS FATALLY FLAWED ...... 17

      1.    Telebrands' evolving proposed claim construction is litigation
            driven and not driven by established principals of law. ..........    17

      2.    Telebrands' proposed claim construction renders the patent
            indefinite under 35 U.S.C. §112, ¶ 2. ..............................    18

VI.   CONCLUSION ...............................................................    21

# TABLE OF AUTHORITIES

**Cases**                                                                          **Pages**

Alloc, Inc. v. Int'l Trade Comm'n., 342 F.3d 1361 (Fed. Cir. 2003) ...........    9

Caterpillar Tractor Co. v. Berco, S.p.A., 714 F.2d 1110 (Fed. Cir. 1983) .....   16, 17

CCS Fitness v. Brunswick Corp., 288 F.3d 1359 (Fed. Cir. 2002) .............    2

Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342
(Fed. Cir. 2005) .................................................................   14, 15, 16

E-Pass Tech., Inc. v. 3Com Corp., 343 F.3d 1364 (Fed. Cir. 2003) ...........    6, 7

Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 93 F.3d 1572
(Fed. Cir. 1996) .................................................................    2

Exxon Chemical Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553
(Fed. Cir. 1995) .................................................................    2

Fin Control Systems Pty, Ltd. v. OAM, Inc., 265 F.3d 1311
(Fed. Cir. 2001) .................................................................    2, 4

Halliburton Energy Services, Inc. v. M-I LLC, 514 F.3d 1224
(Fed. Cir. 2008) .................................................................   13, 19, 20

Honeywell Intern., Inc. v. Int'l Trade, 341 F.3d 1332 (Fed. Cir. 2003) ........   13, 14, 15, 19

Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,
381 F.3d 1111 ..................................................................    4

Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323
(Fed. Cir. 2001) .................................................................    2, 14

Johnson Worldwide Assocs. v. Zebco Corp., 175 F.3d 985
(Fed. Cir. 1999) .................................................................   11, 12

**Cases**                                                                 **Pages**

Markman v. Westview Instruments, Inc., 52 F.3d 967
(Fed. Cir. 1995) ............................................................    1, 2, 3

Northern Telecom Ltd. v. Samsung Elecs. Co., Ltd., 215 F.3d 1281
(Fed. Cir. 2000) ........................................................    3

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) ......................    1, 2, 3, 4, 5, 8

SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,
242 F.3d 1337 (Fed. Cir. 2001) ......................................    3

Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193
(Fed. Cir. 1996) ........................................................    11

Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n., 988 F.2d 1165
(Fed. Cir. 1993) ........................................................    2

Union Pacific Resources Co. v. Chesapeake Energy Corp.,
236 F.3d 684 (Fed. Cir. 2001) .......................................    13

Unique Concepts Inc. v. Brown, 939 F.2d 1558 (Fed. Cir. 1991) .............    12

United Carbon Co. v. Binney & Smith Co., 317 U.S. 228 (1942) .............    13

Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996) .........    3, 5, 8, 10

**Statutes**

35 U.S.C. §112, ¶ 2 ...............................................12, 13, 14, 15, 16, 17, 18, 19, 20

**Other**

American Heritage® Dictionary ...............................................    5, 10

## I.    **INTRODUCTION**

The plaintiff, Carson Optical, Inc. ("Carson"), respectfully submits this Opening

Claim Construction Brief construing selected claim terms appearing in U.S. Patent No.

6,565,232, "Apparatus Having Magnifying, Illuminating and Mirroring Attributes" ("the

'232 Patent"). Carson has limited this Brief to a discussion of those terms that are

disputed by the parties.[1] Telebrands' proposed constructions violate principles of claim

construction and are not supported by the intrinsic evidence. Consequently, Telebrands'

proposed constructions should be rejected by this Court.

In contrast, Carson's proposed constructions are based on proper principles of

claim construction and are supported by both the intrinsic and extrinsic evidence.

Accordingly, Carson's proposed constructions should be adopted by this Court.

## II.    **LEGAL STANDARD**

Resolving allegations of patent infringement involves two steps. "The first step is

determining the meaning and scope of the patent claims asserted to be infringed. The

second step is comparing the properly construed claims to the device accused of

infringing." Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995)

(en banc), aff'd 517 U.S. 30 (1996). The first step in the process is commonly referred to

as claim construction and is a question of law exclusively for the court. Id. at 977.

It is axiomatic that "the claims of a patent define the invention to which the

patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312

---

[1] Carson reserves the right to provide further claim constructions if the defendants, Telebrands, Corporations and Wallet Light USA, LLC (collectively "Telebrands"), identify additional terms in dispute. However, the parties have agreed that the only claims asserted by Telebrands against Carson are Claims 1, 2, 14 and 15 of the '232 Patent. Therefore, Carson's Claim Construction Brief only addresses terms and phrases contained in those asserted claims.

(Fed. Cir. 2005). Therefore, the starting point for determining the meaning of claim terms is the language of the claims themselves. Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001). There is a presumption that the words of a claim have their ordinary and customary meaning. CCS Fitness v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002). Ordinary and customary meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the application." Phillips, 415 F.3d at 1313.

    The claims themselves provide substantial guidance as to the meaning of claim terms. Id. at 1314. To begin with, every word in a claim has meaning. Exxon Chemical Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1557 (Fed. Cir. 1995). In other words, a court cannot read out a claim limitation in order to extend patent protection to subject matter disclosed but not claimed. Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n., 988 F.2d 1165, 1171 (Fed. Cir. 1993); Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 93 F.3d 1572, 1582-83 (Fed. Cir. 1996). Moreover, the context in which a term is used in a claim is "highly instructive." Phillips, 415 F.3d at 1314. Other claims in a patent can also be valuable sources to the court in construing a claim term. Id. The same term appearing in different claims should be given the same meaning unless it is clear from the specification and prosecution history that the term has a different meaning. Fin Control Systems Pty, Ltd. v. OAM, Inc., 265 F.3d 1311, 1318 (Fed. Cir. 2001).

    Claims must be read in view of the specification of which they are a part. Markman, 52 F.3d at 979. The specification "is always highly relevant to the claim construction analysis. Usually it is dispositive; the single best guide to the meaning of a

[claim] term." <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The specification is critical to proper claim construction as it may reveal a special definition given to a claim term that is different from the ordinary and customary meaning. In those cases, the inventor has acted as a lexicographer and the inventor's lexicography governs. <u>Phillips</u>, 415 F.3d at 1316.

Furthermore, the specification may reveal an internal disclaimer or disavowal of claim scope. When that occurs, the inventor has dictated the correct claim scope, and the inventor's waiver, as expressed in the specification is regarded as dispositive. <u>Phillips</u>, 415 F.3d at 1316; <u>SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.</u>, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).

Under certain circumstances, the district courts are authorized to rely on extrinsic evidence when construing claim terms. <u>Phillips</u>, 415 F.3d at 1317; <u>Markman</u>, 52 F.3d at 980. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries and learned treatises." <u>Phillips</u>, 415 F.3d at 1317. The Federal Circuit has noted that dictionaries may be helpful to the court "in determining the meaning of particular terminology to those of skill in the art of the invention." <u>Id.</u> at 1318. The Federal Circuit has warned, however, that the use of a dictionary cannot be divorced from the specification and prosecution history. <u>Id.</u> at 1321. A dictionary definition cannot vary or contradict the meaning of a claim term found in or ascertained by a reading of the specification or prosecution history. <u>Northern Telecom Ltd. v. Samsung Elecs. Co. Ltd.</u>, 215 F.3d 1281, 1295 (Fed. Cir. 2000).

### III.   PROPOSED CONSTRUCTIONS

#### A. Commercial Card-sized[2]

| Term/Phrase | Carson's Proposed Construction | Telebrands' First Proposed Construction[3] | Telebrands' Second Proposed Construction |
|---|---|---|---|
| Commercial Card-sized | A size of 85.60 x 53.98 x 0.76 mm, and corners rounded with a radius of 3.18 mm. | Capable of being carried in a sleeve-like compartment or receptacle as formed in wallets, day timers and other forms of personal carrying devices designed specifically to accommodate commercial cards such as bank cards and other cards such as drivers licenses and the like. | Capable of being carried in a wallet sleeve specifically sized to hold credit cards and the like. |

#### 1.   Language of Claims

  a) *The common and ordinary meaning of "commercial card-sized" should be adopted by this Court.*

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips, 415 F.3d at 1312 citing Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111,

---

[2] "Commercial card-sized" is one example of a number of terms addressed in this Claim Construction Brief that appear in more than one claim.  It is well established that the same term appearing in different claims should be given the same meaning in each claim unless the specification and prosecution history require a different meaning.  Fin Control, 265 F.3d at 1318.  Here, the intrinsic evidence does not state or even suggest that any of the terms addressed in this brief have multiple meanings dependent upon the claim in which they appear.  Accordingly, the construction of any term appearing in more than one claim is the same for every claim in which it appears.

[3] Telebrand's filed its first proposed claim construction on March 28, 2008. (See Exhibit A).  Three business days before the parties' claim construction briefs were due, Telebrands changed its constructions. (See Exhibit B).

1115 (Fed. Cir. 2004); <u>Vitronics</u>, 90 F.3d at 1582 ("we look to the words of the claims themselves . . . to define the scope of the patented invention").

There is a presumption that the words of a claim have their ordinary and customary meaning. <u>Id.</u> The ordinary and customary meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the application." <u>Phillips</u>, 415 F.3d at 1313. "Because the patentee is required to define precisely what his invention is … it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms." <u>Phillips</u>, 415 F.3d at 1312 (internal quotations omitted).

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." <u>Id.</u> at 1314. "In such circumstances, general purpose dictionaries may be helpful." <u>Id.</u>

This is precisely the case here. The meaning of "commercial card-sized" is readily apparent and understood. Specifically, the phrase "commercial card-sized" contains three commonly understood words. First, the <u>American Heritage® Dictionary</u> defines "commercial" as "engaged in commerce." (Exhibit C). Second, the dictionary definition of "sized" is "having a particular or specified size." (Exhibit D). "Size," in turn, is defined as "the physical dimensions, proportions, magnitude, or extent of an object." (Exhibit D). Third, "card" is defined as: "A flat, usually rectangular piece of stiff paper, cardboard, or plastic, especially: **g.** A credit card." (Exhibit E). Therefore,

based on the ordinary and customary meaning of "commercial," "card" and "sized" one would readily understand that "commercial card-sized" means a the specific dimensions required for a card, such as a credit card, to be used in commerce.

Notably, the Federal Circuit Court's decision in E-Pass Tech., Inc. v. 3Com Corp., 343 F.3d 1364, 1367 (Fed. Cir. 2003) is instructive and supports Carson's proposed construction of "commercial card-sized." In E-Pass, the disputed claim term was "electronic multi-function card." The district court construed the term to mean "[a] device having the width and outer dimensions of a standard credit card with an embedded electronic circuit allowing for the conversion of the card to the form and function of at least two different single-purpose cards." Id. at 1366. The district court then incorporated into its definition the standards for credit card dimensions established by ANSI. Id.

On appeal, the Federal Circuit rejected the district court's construction of "electronic multi-function card." The Federal Circuit began its claim construction by looking to the ordinary meaning of the claim term as defined by the dictionary. Id. at 1367. The Court concluded that contrary to the district court's construction, "[t]he dictionary definitions provide no specific length, width, or depth measurements, nor do they refer to the industry standard dimensions." Id. The Court then looked to the usage of the disputed term in context. The Court concluded that "[t]here is nothing in the other claim terms defining the recited card (i.e., 'the electronic multi-function') that suggests a size limitation that departs from the ordinary meaning of 'card.'" Id. at 1368.

Unlike the disputed term in E-Pass, the disputed term in the present case not only suggests a size limitation but clearly defines one as the size of a credit or debit card. Moreover, by using the modifying term "commercial," the '232 Patent clearly informed

one skilled in the art that the dimensions of the card had to comply with the standardized dimensions for cards used in commerce, namely, credit and debit cards.

As the court in E-Pass made clear, there is a distinction between defining a claim term and merely describing an embodiment. See E-Pass, 343 F.3d at 1369 ("In determining whether a statement by a patentee was intended to be lexicographic, it is important to determine whether the statement was designed to define the claim term or to describe a preferred embodiment."). The district court in E-Pass relied on the specification which stated "[p]articular advantages are provided by the *simple form* of the electronic multi-function card *which has the outer dimensions of usual credit or check cards*." Id. Elsewhere in the specification the patentee noted that "credit cards …*normally have standardized dimensions*." The Federal Circuit concluded that the "patentee here understood that in practice card size varies from the standard, as the words 'simple form' and 'normally' suggest that the card may deviate from the usual dimensions. Thus, in this context, the statements … suggest a preferred aspect of the invention subject to variability rather than a precise definition." Id.

In contrast, here the independent claims of '232 Patent explicitly and exclusively use the term "commercial" to define the size of the "card." The specification also repeatedly describes "commercial card-sized" as the size of a debit or credit card. Carson's proposed construction, therefore, does not rely on a preferred aspect of the invention as described by an embodiment. Rather, as detailed above, Carson's proposed construction relies on the explicit language of the claim itself. Consequently, Carson's proposed construction should be adopted by this Court.

b) *The dependent claims of the '232 Patent confirm that "commercial card-sized" is the size of a credit or debit card.*

It is well established that "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." Philips, 415 F.3d at 1314; See also Vitronics, 90 F.3d at 1582.

In the present case, the dependent claims of the '232 Patent provide strong support that "commercial card-sized" should be construed as the size of a standard credit or debit card. Specifically, Dependent Claims 4, 9, 12, 18, 21 and 24 of the '232 Patent state that the apparatus of the independent claims:

> further includ[es] a surface carried by the chassis to which data is capable of being recorded. (Col. 7, lines 65-57; Col. 8, lines 22-24; Col. 8, lines 39-41; Col. 8, lines 65-67; Col. 9, lines 17-19; Col. 10, lines 15-17).

The specification explains that "a surface, such as a magnetic strip, is capable of being attached to the chassis to which data is capable of being recorded." (Col. 1, line 66 – Col. 2, line 1; Col. 2, lines 16-18; Col. 2, lines 31-33; Col. 2, lines 46-48, Col. 2, lines 62-65). The specification further states that:

> [the] device is capable of authorizing a person to charge purchases or services to an account, charges for which the person will be billed periodically. In this vein, a magnetic strip or magstripe is applied or attached to the exterior surface of chassis.... Magstripe is a surface or medium to which information is capable of being recorded, namely account information that is capable of being read by automated teller machines, store readers and bank and Internet computers. (Col. 6, lines 5-15).

Dependent Claims 4, 9, 12, 18, 21 and 24 of the '232 Patent, therefore, further supports the conclusion that "commercial card-sized" is the size of a standard credit or debit card.

    c)   *While the specification of the '232 Patent confirms that "commercial card-sized" is the size of a credit or debit card, the specification provides no size dimension for the depth of the device.*

The specification of the '232 Patent confirms that the term "commercial card-sized" should be construed as the size of a standard credit or debit card. "Claims must be read in view of the specification, of which they are a part" and "yet avoid impermissibly importing limitations from the specification." Alloc, Inc. v. Int'l Trade Comm'n., 342 F.3d 1361, 1370 (Fed. Cir. 2003). This balance turns on how the specification characterizes the claimed invention. Id. In this respect, the Court must look to whether the specification refers to a limitation as only one of a number of possible embodiments or, conversely, whether the specification read as a whole suggests that the very character of the invention requires the limitation be a part of every embodiment. Id.

Here, in describing "commercial card" and its dimensional parameters, the '232 Patent specification provides:

> Commercial cards, namely, credit cards and debit cards, are ubiquitous in modern society.... Cards such as these are approximately 3 1/8 inches long by 2 1/8 inches wide. (Col. 1, lines 17-20).
>
> The size of the chassis approximates that of a commercial card, namely, a credit card or debit card, which is ubiquitous throughout modern society. (Col. 1, lines 53-55).
>
> Generally, in common with a ubiquitous commercial card such as a credit or debit card, chassis is thin and is approximately 3 1/8 inches long by 2 1/8 wide. And so chassis is of a size that is substantially similar to the size of a commercial card, namely, a bankcard such as a credit card or a debit card. (Col. 5, lines 22-27).

Read as a whole, the specification of the '232 Patent makes clear that "commercial card-sized" has the dimensions of a standard credit or debit card. Indeed, the specification describes "cards such as these" as having dimensions that are

"approximately 3 1/8 inches long by 2 1/8 inches wide." (Col. 1, lines 19-20; Col 5, lines 24-25). Although the specification attempts to describe the dimensions for the length and width of the card, it fails to identify the specific depth of the card. (Col. 1, lines 19-20; Col. 5, lines 24-25). Instead, the '232 Patent only states that the depth is "thin." (Col. 5, line 24).[4] In looking at the ordinary meaning of the term "thin," the American Heritage® Dictionary defines thin as "relatively small in extent from one surface to the opposite." (Exhibit F). The dictionary definition of "thin" fails to provide any real guidance as to what the specific depth parameter is for the three-dimensional device. The '232 Patent, therefore, fails to particularly point out and distinctly claim the subject matter of the claimed invention as required by Section 112. While the words of the claim and the specification clearly impose a size limitation and arguably define two of the parameters of the three dimensional card, the patentee's use of the subjective and relative term "thin" to define the depth renders that parameter utterly ambiguous.

        d) *As a result of the ambiguity, one skilled in the art would resort to extrinsic evidence for the size of the depth dimension of the device.*

Where, as here, the intrinsic evidence is insufficient to resolve ambiguity in defining the depth parameter, the Court may rely upon extrinsic evidence. See Vitronics, 90 F.3d at 1584. In the present case, based on the intrinsic evidence that clearly defines "commercial card-sized" as the size of a standard credit or debit card, one skilled in the art would look to the standardized dimensions of bank or credit cards to define the depth parameter. The universally accepted dimensional standard for banking cards is set forth by the American National Standards Institute (ANSI) and the International Standards

---

[4] The prosecution history also fails to shed any light on what "thin" means as that term is used to describe the depth parameter of "commercial card-sized."

Committee (ISO).[5]  Both the ANSI and ISO standards establish that banking cards have a

length of 85.60 mm, a height of 53.98 mm, and a thickness of 0.76 mm.  See Exhibit G.[6]

Accordingly, "commercial card size" necessarily requires dimensions that conform to the

universally accepted standards established by ISO and adopted by ANSI.  Accordingly,

Carson's proposed construction remains true to the explicit language of the claim itself

and the intrinsic evidence.

**B.    Chassis**

| Term/Phrase | Carson's Proposed Construction | Telebrands' First Proposed Construction | Telebrands' Second Proposed Construction |
|---|---|---|---|
| Chassis | A housing or structure. | A commercial card-sized frame structure to receive a power source and circuitry. | A frame for supporting or incorporating convenience features, including visual aid and illumination. |

The term "chassis" is a common and ordinary phrase without specialized usage in

the relevant art.  Consequently, this Court is entitled to rely on its common and ordinary

meaning.  Johnson Worldwide Assocs. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir.

1999) ("a court must presume that the terms in the claim mean what they say, and, unless,

otherwise compelled, give full effect to the ordinary and customary meaning of claim

terms").

---

[5] The ANSI and ISO standards are inherently reliable evidence of the dimensions of a "commercial" card such as a bankcard.  See Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202-03 (Fed. Cir. 1996).  Indeed, the universally agreed upon ISO and ANSI standards are akin to dictionaries, encyclopedias, and treatises that "are objective resources that serve as reliable sources of information on the established meanings that would have been attributed to the terms of the claims," and not improper extrinsic evidence.  Id.

[6] Members of ISO are national standardization bodies which include ANSI.  ANSI adopted the ISO/IEC 7810 International Standard.

Both versions of Telebrands' constructions violate principles of claim construction. Telebrands would like to expand the meaning of "chassis" to include other limitations that are separately claimed. Specifically, "convenience features, including visual aid and illumination" are separate claimed elements. (See, for example, Col. 7, line 52 claiming a magnifying lens; Col. 7, lines 54-58 claiming a light). But such an approach is contrary to established law. See Unique Concepts Inc. v. Brown, 939 F.2d 1558, 1562 (Fed. Cir. 1991) (merging one element into another is improper because it renders claim language redundant). Adopting Telebrands' construction would, therefore, subsume other elements separately claimed making the language of the other limitations redundant. Because claims must be construed in a manner that avoids such redundancies, the Court should adopt Carson's proposed definition and construe the term "chassis" as a housing or structure.

### C.    Carried by

| Term/Phrase | Carson's Proposed Construction | Telebrands' First Proposed Construction | Telebrands' Second Proposed Construction |
|---|---|---|---|
| Carried by | A part of. | A part of or attached to. | Supported by or attached to. |

The phrase "carried by" is a common and ordinary phrase without specialized usage in the relevant art. Consequently, this Court is entitled to rely on its common and ordinary meaning which is reflected in Carson's proposed construction. Johnson Worldwide Assocs., 175 F.3d at 989.

**IV.**  **If the Court does not define "thin" by the objective standard promulgated by ISO, then the subjective term "thin" would render the claim invalid for indefiniteness under 35 U.S.C. §112, ¶ 2**

35 U.S.C. §112, ¶ 2 requires that the specification of a patent "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. §112, ¶ 2. Because the claims of a patent set forth the bounds of patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of what subject matter is covered by the exclusive rights of the patent. See Halliburton Energy Services, Inc. v. M-I LLC, 514 F.3d 1224, 1249 (Fed. Cir. 2008). "The Supreme Court has stated that '[t]he statutory requirement of particularity and distinctness in claims is met only when [the claims] clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise.'" Halliburton Energy Services, 514 F.3d at 1249 (quoting United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236 (1942)). "Otherwise, competitors cannot avoid infringement, defeating the public notice of patent claims." Halliburton Energy Services, 514 F.3d at 1249.

The indefiniteness inquiry under 35 U.S.C. §112, ¶ 2 focuses on "whether those skilled in the art would understand the scope of the claim when the claim is read in light of the rest of the specification." Union Pacific Resources Co. v.Chesapeake Energy Corp., 236 F.3d 684, 692 (Fed. Cir. 2001). In construing a claim for indefiniteness, "the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." Honeywell Intern., Inc. v. Int'l Trade, 341 F.3d 1332, 1338 (Fed. Cir. 2003) (quoting

Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001)).
A claim therefore becomes invalid for indefiniteness under 35 U.S.C. §112, ¶ 2 when the
language used by the patentee is "insolubly ambiguous, and no narrowing construction
can be properly adopted" that would allow one skilled in the art to determine the proper
scope of the patent. Honeywell Intern., Inc., 341 F.3d at 1338-39.

   In the present case, if the Court defines the depth dimension as "thin" the claim
becomes insolubly ambiguous and therefore invalid for indefiniteness. Claim 1 of the
'232 Patent describes "an apparatus comprising: a commercial card-sized chassis having
an opening" and also having a number of other physical characteristics. Col. 7, lines 50-
51. The patent's written description states, "[g]enerally in common with a ubiquitous
commercial card, chassis *is thin* and is approximately 3 1/8 inches long and 2 1/8 inches
wide."(Col. 5, lines 22-27, emphasis added). While the length and height dimensions are
set forth with some definition, the depth is described only by the subjective term "thin."
Nowhere in the specification or claims of the '232 Patent is the term "thin" defined with
more definite language.

   The use of this undefined, subjective and relative term "thin" is insufficient to
define the depth of the claimed three-dimensional device, rendering the claims of the
'232 Patent invalid under 35 U.S.C. §112, ¶ 2. The Federal Circuit's decision in
Datamize, LLC v. Plumtree Software, Inc., is instructive in this regard. In that case, the
Federal Circuit found that the inclusion of a purely subjective claim term, with no
objective definition or parameters, renders the entire claim invalid under 35 U.S.C. §112,
¶ 2. See Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1350-51 (Fed. Cir.
2005). There, the claimed invention was a software program that allowed a person to

author user interfaces for electronic kiosks. <u>Datamize, LLC</u>, 417 F.3d at 1344.  The

patent's only independent claim stated that the claimed invention allowed users to

customize on-screen characteristics of the kiosks, so that the computer screens of those

kiosks would be "uniform" and "aesthetically pleasing".  <u>Id.</u> at 1350.   The Court found

the claim term "aesthetically pleasing" to be indefinite under 35 U.S.C. §112, ¶ 2,

reasoning that, "[t]he scope of claim language cannot depend solely on the unrestrained,

subjective opinion of a particular individual purportedly practicing the invention."  <u>Id.</u> at

1349.  Instead, "[s]ome objective standard must be provided in order to allow the public

to determine the scope of the claimed invention." <u>Id.</u>  Because the patentee failed to

provide any such objective definition of "aesthetically pleasing" within the claims or the

written description of the patent, the Court held that the patentee failed to "particularly

point out and distinctly claim the subject matter which the patentee regards as his

invention."  <u>Id.</u> at 1356 (quoting 35 U.S.C. §112).  Thus, the Court found the entire claim

to be invalid and unenforceable because, "[w]hile beauty is in the eye of the beholder, a

claim term, to be definite, requires an objective anchor."  <u>Id.</u> at 1350.

Here, the claims of the '232 Patent suffer from the same fatal lack of an objective

anchor for a purely subjective claim term, and unless Carson's proposed construction is

adopted, should be found to be invalid for indefiniteness under 35 U.S.C. §112, ¶2.  Like

the patent at issue in <u>Datamize</u>, the '232 Patent attempts to describe the depth of a three

dimensional object using only the subjective term "thin," without ever defining what thin

means.  <u>See</u> Col. 5, lines 22-27.  In the absence of such a definition, terms used in a claim

"bear a presumption that they mean what they say and have the ordinary meaning that

would be attributed to those words by persons skilled in the relevant art." <u>Honeywell</u>,

341 F.3d at 1338. Yet according to the American Heritage Dictionary, the term "thin" means "relatively small in extent from one surface to the opposite." See Exhibit F. This definition fails to inform one skilled in the art in determining what the specific parameter is for depth.

Further, unlike the approximate measurements for the length and height included in the specification of the '232 Patent, the subjective term "thin" to describe the depth is not bounded by any objective parameters whatsoever. By failing to provide even an upper or lower boundary for determining when a claimed device is sufficiently "thin" to fall under the ambit of the '232 Patent, the patentee in this case, like the patentee in Datamize, failed to "particularly point out and distinctly claim the subject matter which the patentee regards as his invention." Datamize, 417 F.3d at 1356. In so doing, the patentee in this case rendered the determination of whether a potentially infringing device is "thin" enough to infringe the '232 Patent "completely dependent on a person's subjective opinion" in direct violation of established principles of law. Datamize, 417 F.3d at 1350. Thus, if Carson's proposed construction is not adopted, then the specification use of the term "thin" to define the depth of the device renders the claims of the '232 Patent insolubly ambiguous, and therefore invalid under 35 U.S.C. §112, ¶ 2.

To be sure, this is not the first time the term "thin" has been analyzed in the context of 35 U.S.C. §112, ¶2. In Caterpillar Tractor Co. v. Berco, S.p.A., 714 F.2d 1110, 1114 (Fed. Cir. 1983), the U.S. Patent and Trademark Office rejected certain claims in plaintiff's original patent application under 35 U.S.C. §112, ¶2. In rejecting the claims, the PTO stated that "the term 'thin' is meaningless, since no basis for comparison exists in the claims. No definition of 'thin' was provided in the specification of the

original application...." Id.  Less than a year after plaintiff filed its original application, it filed a continuation-in-part application which notably contained new material defining "thin" as "about 0.040 inches thick" and "no more than a maximum of 0.080 inches." Id. at 1116.  Because of these specific parameters for the term "thin," the Federal Circuit held that the term "thin" was no longer meaningless. Id.

What is clear from the Federal Circuit Court decision is that the use of the term "thin" without objective anchor is inherently vague and indefinite.  Here, the '232 Patent fails to provide a definition for a critical component of the size of the device, and instead offers the "meaningless" and subjective term "thin." See Caterpillar Tractor Co., 714 F.2d at 1114.  The claims of the patent and the specification provide no reference point or objective anchor for one skilled in the art to determine when the device is "thin."  Finally, the dictionary definition of the term sheds little light on the meaning of "thin."  Thus, because the term "thin" is undefined and does not set forth the parameters by which it should be measured, the '232 Patent is insolubly ambiguous, and therefore invalid under 35 U.S.C. §112, ¶ 2.

V.    **Telebrands' proposed construction of the term "commercial-card sized" is fatally flawed.**

*1. Telebrands' evolving proposed claim construction is litigation driven and not driven by established principles of law.*

Telebrands' constructions are moving targets.  As noted above, Telebrands waited until three business days before the parties' claim construction briefs were due to change its proposed construction.  Telebrands' first proposed claim construction blatantly attempted to define "commercial card-sized" by ignoring what the actual specification says.  The specification explicitly states:

> Generally in common with a ubiquitous commercial card *such as a credit or debit card*, chassis *is thin and is approximately 3 1/8 inches long by 2 1/8 inches wide.*  And so chassis is of a size that is *substantially similar to the size of a commercial card, namely a bankcard such as a credit card or debit card.  As a result*, device is capable of being easily stored in a card sleeve/receptacle of a wallet, a day timer or other personal carrying device of a type having one or more sleeves or receptacles that are designed specifically to accommodate commercial cards such as bank cards and other cards such as a drivers licenses and the like.  (Col. 5, lines 22-33) (emphasis added).

Telebrands' first proposed claim construction conveniently ignored all the language before "[a]s a result," and therefore sought to impermissibly broaden the scope of the claim.  Telebrands' second proposed claim construction fairs no better.  Telebrands once again ignores the actual language of the claim itself which explicitly describes the card as the size of a commercial card and not the size of a wallet sleeve.  Consequently, Telebrands' litigation inspired definition should be rejected.

> ### 2. Telebrands' proposed claim construction renders the patent indefinite under 35 U.S.C. §112, ¶ 2.

In an attempt to fit Carson's allegedly infringing products under the ambit of the '232 Patent, Telebrands offers the following proposed construction for the term "commercial card-sized," stating that "commercial card-sized" means "capable of being carried in a wallet sleeve specifically sized to hold credit cards and the like." See Exhibit B.  This proposed construction defines the device as one that can fit into the "sleeve" of any wallet of varying sizes or material.  The proposed construction does not provide any upper or lower restraints for the size of the "sleeve," other than that it's big enough to hold a credit card "and the like."  Telebrands' proposed construction, therefore, defines the size of the commercial card not but any specific parameters but by what it can fit into.

Such a broad and ambiguous definition renders the claims of the '232 Patent indefinite under 35 U.S.C. § 112, ¶ 2 and cannot be adopted by this court.

A claim of a patent is invalid for indefiniteness under 35 U.S.C. §112, ¶ 2 when the language used by the patentee is "insolubly ambiguous, and no narrowing construction can be properly adopted" which would allow one skilled in the art to discern the proper scope of the patent. Honeywell Intern., 341 F.3d at 1338-39. While it is true that "patentees are allowed to claim their inventions broadly, they must do so in a way that distinctly identifies the boundaries of their claims." Halliburton Energy Services, Inc., 514 F.3d at 1253. Thus, "[w]hen a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances…and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite." Halliburton Energy Services, Inc., 514 F.3d at 1255.

The Federal Circuit Court of Appeals encountered one such situation in Halliburton Energy Services, Inc. v. M-I LLC., 514 F.3d at 1256. There, the subject patent described a method of conducting an oil drilling operation using a "fragile gel" drilling fluid. Halliburton Energy Services, 514 F.3d at 1246. However, the patentee failed to set a limit for exactly how "fragile" a gel must be to be covered by the patent at issue, leaving the scope of the patent ambiguous. Id. at 1253. In an attempt to remedy this fatal flaw, the patentee offered a construction of the term "fragile gels", arguing that it should be construed to cover all gels that fit onto a particular L-Shaped curve measuring fragility based on how quickly the gel turned into a liquid when force is applied and the ability of the fluid to suspend drill cuttings at rest. Id. at 1255. The

Court in <u>Halliburton Energy Services</u> rejected this proposed construction, stating that it did not allow an artisan "to know from one well to the next whether a certain drilling fluid was within the scope of the claims", and was therefore not enough to overcome the ambiguity in the scope of the claim term.  <u>Id.</u> at 1254.   Under the proposed construction of the term, each person attempting to practice the patent would be required to make a separate infringement determination for every set of circumstances, rendering the patent indefinite under 35 U.S.C. §112, ¶ 2.  Thus, the Court pointed out that "even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." <u>Id.</u> at 1251.

As was the case in <u>Halliburton Energy Services</u>, Telebrands' proposed claim construction cannot be adopted because it would render the subject claim indefinite under 35 U.S.C. §112, ¶ 2. <u>See Halliburton Energy Services</u>, 514 F.3d at 1256.  Specifically, Telebrands proposes that this Court define "commercial card-sized" as any card that can fit into a "wallet sleeve" yet it offers no definition or parameters for the size of these "sleeves."  Without more definite language, this proposed construction is simply meaningless.  Telebrands' proposed construction ignores that wallet sleeves can vary in size.  Adopting such an ambiguous and broad construction of "commercial card-sized" would require one skilled in the art to determine the legal scope of the patent on a case by case basis, which the Federal Circuit Court has held to be the clearly indefinite under 35 U.S.C. §112, ¶ 2.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Telebrands' proposed constructions should be rejected

by this Court and Carson's proposed constructions should be adopted.

Dated: April 28, 2008          By: _____

John R. Horvack, Jr. (JH-8991)
Fatima Lahnin (FL-0701)
195 Church Street, 18th Floor
New Haven, Connecticut  06509-1950
Tel: (203) 777-5501
Fax: (203) 784-3199
E-mail: <u>jhorvack@carmodylaw.com</u>
          <u>flahnin@carmodylaw.com</u>

Attorneys for Plaintiff
Carson Optical, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2008, a true copy of **Plaintiff's Opening Claim Construction Brief** was served, on the following counsel at the following address by First Class Mail, postage prepaid:

> Peter D. Murray
> William E. Pelton
> Robert T. Maldonado
> Tonia A. Sayour
> Cooper & Dunham LLP
> 1185 Avenue of the Americas
> New York, NY 10036
> pdmurray@cooperdunham.com
> wpelton@cooperdunham.com
> rmaldonado@cooperdunham.com
> tsayour@cooperdunham.com

Fatima Lahnin