UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARSON OPTICAL, INC.<br><br>     Plaintiff,<br><br>vs.<br><br>TELEBRANDS CORPORATION, and<br>WALLET LIGHT USA, LLC<br><br>     Defendants. | CIVIL ACTION NO.<br>07-CV-8020 (SCR) |

## DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF

Peter D. Murray, Esq. (PM-6912)
William E. Pelton, Esq. (WP-1850)
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 278-0400
Fax: (212) 391-0526

Attorneys for Defendants
Telebrands Corp. and
Wallet Light USA, LLC

TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. TECHNOLOGY BACKGROUND ................................................................................ 1

III. LEGAL STANDARDS .................................................................................................. 1

    A. General Principles .................................................................................................. 2

    B. Factors Affecting Claim Construction ................................................................... 2

        1.     Intrinsic Evidence ......................................................................................... 2

        2.     Extrinsic Evidence ....................................................................................... 4

IV. TELEBRANDS' PROPOSED CLAIM CONSTRUCTIONS ....................................... 5

        (1)    commercial card-sized ................................................................. 5

        (2)    chassis ......................................................................................... 7

        (3)    carried by .................................................................................... 8

V. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|
| *Phillips v. AWH Corp.* <br> 415 F.3d 1303, 1312 (Fed. Cir. 2005) | 2, 3, 4, 5 |
| *White v. Dunbar* <br> 119 U.S. 47, 51 (1886) | 3 |
| *United States v. Adams* <br> 383 U.S. 39, 49 (1966) | 3 |
| *Markman v. Westview Instruments, Inc.* <br> 517 F.3d 370 (1996), *affg.* 52 F.3d 967, 979 (Fed. Cir. 1995)(*en banc*); | 3 |
| *Vitronics Corp. v. Conceptronic, Inc.* <br> 90 F.3d 1576, 1582 (Fed. Cir. 1996) | 3 |
| *Novartis Pharms. Corp. v. Abbott Labs.* <br> 375 F.3d 1328, 1334 (Fed. Cir. 2004) | 3 |
| *Teleflex, Inc. v. Ficosa N. Am. Corp.* <br> 299 F.3d 1313, 1325 (Fed. Cir. 2002) | 3 |
| *C.R. Bard, Inc. v. United States Surgical Corp.* <br> 388 F.3d858, 826,867 (Fed. Cir. 2004) | 4 |

## I. INTRODUCTION

Pursuant to the Court's Order entered March 18, 2008, defendants Telebrands Corp. and Wallet Light USA, LLC (collectively "Telebrands"), by and through their attorneys, hereby jointly submit this Memorandum in support of their proposed constructions for three agreed upon claim terms or phrases from U.S. Patent 6,565,232 ("'232 Patent") in suit to be presented for interpretation by this Court.[1]

## II. TECHNOLOGY BACKGROUND

The technology at issue relates to conventional card-sized implements which fit into a wallet sleeve designed to hold credit cards, debit cards or bank cards. In accordance with this invention the card-sized implements have or retain illumination features such as an LED light, a power source or battery, an on-off switch and associated circuitry for the light. The light is located on one of the major side surfaces of the card and is adapted to project light onto an object beneath the card such as a menu, a newspaper or the like. Some of these card-sized implements also have visual aid such as a magnifying lens mounted within an opening through the major side surfaces of the card so that the light projects onto an object to be viewed through the magnifying lens.

## III. LEGAL STANDARDS

### A.     General Principles

In July 2005, the Federal Circuit issued an *en banc* decision in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). *Phillips* reaffirmed and amplified many of the Court's prior decisions detailing various aspects of claim construction.

---

[1] The '232 Patent in suit is Exhibit 1 to this Memorandum. Exhibit 2 to this Memorandum is a claim chart with claims 1, 2, 14 and 15 from the '232 Patent and Telebrands' proposed construction of the three terms or phrases at issue in these claims.

1

A patent provides notice to the public of the scope of the patentee's rights. Two principal sources of evidence are available to the trial court in construing the claims of a patent: (1) the "intrinsic" evidence, which includes the language of the claims, the specification, the prosecution history in the Patent and Trademark Office, and the prior art of record during prosecution of the patent; and (2) "extrinsic" evidence, which may consist of reference materials, such as dictionaries, treatises, technical references or product promotional materials that have been publicly available. The Court in *Phillips* clarified the role and relative importance of each type of evidence.

### B. Factors Affecting Claim Construction

#### 1. Intrinsic Evidence

The claims define the patent rights. Intrinsic evidence is the primary evidence of the scope of the claims. The starting point for claim construction is the language of the claims themselves and the ordinary and customary meaning that one of ordinary skill in the relevant art would attribute to the terms used in the claims. However, claim terms do not stand alone and are not considered in a vacuum. The patent contains a specification that consists of illustrative drawings and a written description of the various embodiments of what the inventors believe their invention to be. The importance of the specification is based upon the written description requirement of 35 U.S.C. § 112(1). *Phillips* at 1311, 1316.

The best way to understand the meaning of a claim is to read the claim in the context of the entire patent. *White v. Dunbar*, 119 U.S. 47, 51 (1886). "It is fundamental that claims are to be construed in the light of the specification." *United States v. Adams*, 383 U.S. 39, 49 (1966). The specification is always highly relevant and is the single best guide to the meaning of claim terms. *Markman v. Westview Instruments, Inc.*, 517 F.3d 370 (1996), *aff'g* 52 F.3d 967, 979 (Fed.

2

Cir. 1995)(*en banc*); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Thus, the patentee's description in the specification governs construction of the claims.

The patentee has the option of defining in the specification the terms that are used in the claims. Thus, the specification may explicitly or implicitly attribute a meaning for claim terms that identifies or describes the invention differently from how such terms would ordinarily be understood by persons of ordinary skill in the field of the invention. *Phillips*, 415 F.3d at 1316; *Novartis Pharms. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1334 (Fed. Cir. 2004). The specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lacks sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In many cases, as in the present case, the meaning of the three terms at issue is readily apparent from the embodiments of the invention as described in the patent specification.

The prosecution history of a patent constitutes the official Government record of events in the Patent Office affecting the claims. It records the negotiation between the inventor and an examiner in the Patent Office leading to the issuance of the patent, and may be considered when in evidence. The prosecution history should not be used to limit the claims absent a clear and unambiguous disavowal of specific scope. *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 826, 867 (Fed. Cir. 2004). The prosecution history for the '232 Patent is not presently believed by Telebrands to be required for those claim construction issues raised in this case. However, Telebrands reserves the right to introduce the prosecution history into evidence if necessary.

3

The prior art references cited in the patent and prosecution history are also part of the intrinsic evidence. The Examiner is presumed to have reviewed all of the cited references. The cited references, if in evidence, may provide evidence of how certain terms were understood in the relevant field at the time of the invention. The prior art references cited against the application that led to the '232 Patent are not presently believed by Telebrands to be required for claim construction issues in this case. However, Telebrands reserves the right to introduce into evidence one or more of the cited prior art references if necessary.

### 2. Extrinsic Evidence

Extrinsic evidence is everything external to the patent and prosecution history. *Phillips* at 1317. The weight to be given extrinsic evidence will depend on the circumstances. Extrinsic evidence is normally less significant to claim construction than intrinsic evidence. *Id.* In *Phillips*, the court recommended claim construction "focus at the outset on how the patentee used the claim term in the claims, specification, and prosecution history, rather than starting with," for example, extrinsic evidence such as a dictionary definition. *Phillips* at 1321. *Phillips* has confirmed that if extrinsic evidence would suggest a meaning of claim language different from what is set forth in or may be determined from the patent specification it should not be relied upon because to do so would undermine the public notice function of patents. *Phillips* at 1314. In *Phillips*, the Federal Circuit concluded that extrinsic evidence may be considered by the court, and Telebrands intends to introduce advertising and promotional materials of Carson to assist this Court in understanding how a person of ordinary skill would have understood one of the terms at issue based upon Carson's public teachings. This extrinsic evidence supports a meaning for the term "commercial card-sized" that is consistent with the specification.

## IV. **TELEBRANDS' PROPOSED CLAIM CONSTRUCTIONS**

The parties have agreed that the following claim terms and phrases of the '232 Patent are to be interpreted by the Court: (1) **commercial card-sized**; (2) **chassis**; and (3) **carried by**. For the Court's convenience, the relevant claims in which these terms appear and Telebrands' proposed construction of these terms is set forth in Exhibit 2 to this Memorandum. This Memorandum includes the agreed upon claim terms and contains Telebrands' proposed constructions and its evidentiary support, principally based upon the specification of the '232 Patent. Telebrands contends that a person of ordinary skill in the relevant art would easily determine the proper meaning of these terms from the specification of the '232 Patent.

### (1) commercial card-sized

This phrase appears in independent claims 1 and 14 of the '232 Patent which recite a "commercial card-sized chassis." Telebrands' proposed definition for "commercial card-sized," based upon the specification of the '232 Patent and Carson's advertising and promotional materials is:

> **Capable of being carried in a wallet sleeve specifically sized to hold credit cards and the like.**

The specification of the '232 Patent unambiguously defines what is meant by a "commercial card." A "commercial card" is a credit card or the like. The specification states that a commercial card is "a bankcard such as a credit card or a debit card." (Abstract). The specification states that "Commercial cards, namely, credit cards and debit cards are ubiquitous

5

in modern society as are phone cards and insurance cards." (1:17-19).[2] See also: "a ubiquitous commercial card such as a credit or debit card" (5:23-24); "a commercial card, namely, a bankcard such as a credit card or a debit card" (5:26-27); "commercial cards such as bank cards and other cards..." (5:32). Accordingly, as defined by the specification of the `232 Patent, a "commercial card" can be a credit card, a debit card, a bank card or the like.

The size of the "commercial card," is also unambiguously defined by the specification of the `232 Patent. "[P]eople carry and store these cards in sleeve-like compartments/receptacles formed in wallets and day timers and other forms of personal carrying devices that are specifically sized for holding cards of this size." (1:20-24). Further, the specification states: "Given the ubiquity of commercial cards and the associated ubiquity of the wallets and day timers and other personal carrying devices having storage features specifically designed for storing commercial cards, it would be highly desirable to provide a device that in size is substantially equal to that of a conventional commercial card and that incorporates visual aid and illumination attributes." (1:35-41). Also: "a device [seen in Fig. 1], embodying the principle of the instant invention (3:58-60) includes a chassis "of a size that is substantially similar to the size of a commercial card,..." (5:25-26) which the specification goes on to state "is capable of being easily stored in a card sleeve/receptacle of a wallet, day timer or other personal carrying device of a type having one or more sleeves or receptacles that are designed specifically to accommodate commercial cards such as bank cards and other cards such as a drivers licenses [sic] and the like." (5:28-33). Accordingly, it is clear from the specification of the `232 Patent that the claim term "commercial card-sized" would be understood to mean capable of being

---

[2] This notational reference, and others like it in this Memorandum, is to the column and lines of the `232 Patent where the quoted language appears. Here, the reference is to column 1, lines 17-19.

6

carried in a wallet sleeve specifically sized to hold credit cards and the like, as Telebrands has proposed.

Even Carson's public promotional materials support Telebrands' proposed construction. Plaintiff Carson advertises and promotes products (see Exhibit 3 attached hereto) that are explicitly stated as being "credit card size magnifiers." By this admission, Carson's magnifiers are "commercial card-sized" as defined in the '232 Patent where "credit cards" are "commercial cards." (5:26-27). Indeed, Carson's magnifiers contain a frame carrying a lens, a light, a switch, a battery and electrical circuitry and are explicitly stated by Carson in Exhibit 3 as being a "convenient wallet size." Moreover, Carson's magnifiers are depicted in Exhibit 3 being inserted into a wallet sleeve designed to hold credit cards and in Exhibit 4 to this Memorandum Carson advertises that its magnifier "Fits in your wallet." Thus, for promotional purposes, Carson supports Telebrands' proposed construction that "commercial card-sized" means capable of being carried in a wallet sleeve specifically sized to hold credit cards and the like.

(2) **chassis:**

This term appears in claims 1, 2, 14 and 15 of the '232 Patent which describe "chassis" as being "commercial credit-card sized." Telebrands' proposed definition for "chassis," based entirely upon the specification of the '232 Patent is:

> **A frame for supporting or incorporating convenience features, including visual aid and illumination**

The term "chassis" is not specifically defined in the specification of the '232 Patent. However, the specification states that the inventors desired a "device" that "incorporates visual aid and illumination attributes." (1:41). The specification then states: "In accordance with the

7

principle of the invention" (1:50-51), the "device" "includes a chassis" (1:52) that "supports" (1:56-58; 2:26) or "carries" (5:13; 2:39-40) or is "fitted with" (2:59) illumination caused by a switch and a light.

The specification indicates that "Chassis 12" (Figs. 1-3, 8-10, and 12-15) comprises a "frame 14" (3:61-62; Figs. 2-3 and 10-11). In one embodiment, shown in Fig. 2, the chassis frame 14 receives both a visual aid such as magnifying lens 17, and illumination caused by the switch-actuated light, including batteries 19 and electric circuit assembly 22. (3:61-65). The electric circuit assembly 22 "is furnished with an attached switch 26 and an attached light 30." (4:46-48). The "light 30 is capable of being actuated in response to actuation of switch 26." (5:13-15, Fig. 5).

The chassis is also described as "capable of being provided with a variety of convenience features, namely a magnifying lens, a mirror ... etc.," as well as many other convenience features. (7:16-19, 25-40). Accordingly, it is clear from the specification that the term "chassis" would be understood to mean a frame for supporting or incorporating convenience features, including visual aid and illumination, as proposed by Telebrands.

### (3) carried by

This phrase appears in claims 1 and 14 of the '232 Patent which recite a switch and a light "carried by" the chassis. Telebrands' proposed definition for "carried by," based solely on the specification of the '232 Patent is:

**Supported by or attached to**

8

The specification unambiguously states that the chassis "supports" (1:56-58; 2:26) or "carries" (5:13; 2:39-40) or is "fitted with" (2:59) illumination caused by a switch and a light. The switch and light are also described as "attached to" the chassis. (4:49-51). The specification never says that the light and switch are "part of" the chassis, as proposed by Carson.

The term "part of" is used in the specification in only two contexts. One is that the light 30 and the switch 26 (Fig. 5) are described as "part of" the electric circuit assembly 22. (4:48-49). The other is that overlay panels 23 and 29 are described as "part of" the chassis. (4:9, 23-24 and 31-32). The term "part of" was selected in these contexts because the switch and the light are components of the electric circuit, and the overlay panels are components of the chassis frame.

In contrast, neither the switch nor the light is a component of the chassis frame. Both are supported by or attached to the chassis frame. This difference in context for use of "part of" in the specification as contrasted with the context for use of "carries" or "supports" or "attached to," indicates that the inventors ascribed a different meaning to "part of" than they did to "carried by." Claims 1 and 14 therefore cannot be construed to require that the claimed switch and claimed light are "part of" the chassis. It is more ordinary, conventional and in accordance with the specification to determine that the light and the switch are "supported by or attached to" the chassis, as proposed by Telebrands.

Finally, based upon the foregoing, and the claim requirement that <u>both</u> the light and switch be "carried by" the chassis, there is no described embodiment in the '232 Patent in which both the light and its switch could be understood to be "part of" the chassis. Thus, it is apparent that Carson's proposed construction that "carried by" must mean "part of" would result in the

9

anomaly that none of the claims at issue in this case would read on any of the described embodiments.

## V. CONCLUSION

For the foregoing reasons, Telebrands respectfully requests that the Court adopt the Telebrands' proposed constructions for the above discussed claim terms and phrases.

Date:   April 28, 2008

Respectfully submitted,

By: /s/ William E. Pelton
Peter D. Murray, Esq. (PM-6912)
William E. Pelton, Esq. (WP-1850)
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 278-0400
Fax: (212) 391-0526

Attorneys for Defendants
Telebrands Corp. and
Wallet Light USA, LLC

10

CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of April, 2008, I electronically filed the foregoing DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> John R. Horvack, Jr.
> Fatima Lahnin
> CARMODY & TORRANCE
> 50 Leavenworth Street
> Waterbury, Connecticut 06702

*/s/ William E. Pelton*
William E. Pelton