UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARSON OPTICAL, INC. ) | CIVIL ACTION NO. |
| ) | 07-CV-8020 (SCR) |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| TELEBRANDS CORPORATION, and ) | |
| WALLET LIGHT USA, LLC ) | |
| ) | |
| Defendants. ) | |
| ) | |


**DEFENDANTS' TELEBRANDS CORP. AND WALLET LIGHT
USA, LLC RESPONSIVE CLAIM CONSTRUCTION BRIEF**


Peter D. Murray, Esq. (PM-6912)
William E. Pelton, Esq. (WP-1850)
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 278-0400
Fax: (212) 391-0526

*Attorneys for Defendants
Telebrands Corp. and
Wallet Light USA, LLC*

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION…………………………………………….………......……….1

II. ARGUMENT…………………………………………………………………….....3

    A.    The Claim Terms at Issue…………….…...…………………....…..3

        1. Commercial Card-Sized…....………...………………………………………3

        2. Chassis……………….…..………………………………….…....10

        3. Carried by…………..…………………..………………………………....11

    B.    Telebrands' Amended Answers to Interrogatories…...………......……...12

III. CONCLUSION …………..…………………………….....….………….….………12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110 (Fed. Cir. 1983)………………..7

*Datamize, LLC v, Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005)…………..7, 8

*Halliburton Energy Services, Inc., v. M-I LLC*, 514 F.3d 1224 (Fed. Cir. 2008)………8, 9

*Honeywell Intern., Inc., v. Int'l Trade*, 341 F.3d 1332 (Fed. Cir. 2003)………………...11

*Philips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)………………..………………1

**RULES**

35 U.S.C. § 112 ¶2…………………………………………………………………...7

Fed. R. Civ. P. 26(e)(1)(A)…………………………………………………..………..12

I. **INTRODUCTION**

Defendants Telebrands Corp. and Wallet Light USA, LLC ("Telebrands") submit this Responsive Claim Construction Brief concerning "**commercial card-sized**," "**chassis**" and "**carried by**, "appearing in claims 1, 2, 14 and 15 of U.S. Patent 6,565,232 ("`232 Patent"), the agreed-upon claim terms that the parties submit for construction by the Court.

As is often the case in patent lawsuits, one of the claim terms to be construed has dominant significance. In this Case that term is "**commercial card-sized**."[1] Carson's proposed construction that "commercial card-sized" means the American National Standards Institute ("ANSI") standards for credit cards is not supported by the specification of the `232 Patent, is not supported by the cases cited by Carson, is not supported by the relevant field of art that has evolved after issuance of the `232 Patent and is, at best, technically unrealistic and should be rejected. Telebrands proposed construction, namely "**capable of being carried in a wallet sleeve specifically sized to hold credit cards and the like**" has full support in the specification of the `232 Patent, is consistent with the invention described therein, is consistent with the customary meaning of the term "credit card sized" as it has evolved in advertisements for products in the relevant field of art, defined below, and should be adopted by this court.[2]

With respect to "**chassis**," Carson's proposal that "chassis" means "housing" is not supported by the intrinsic evidence;[3] nor does Carson cite extrinsic evidence to support this construction. Significantly, Carson's proposal that "chassis" means

---

[1] Of 21 pages in its Opening Brief, Carson uses 19 pages essentially directed to this claim term.
[2] A customary meaning may be derived from the field of art. *Philips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).
[3] The word "housing" does not appear in the specification of the `232 Patent.

"housing" is not consistent with Carson's proposed meaning of "commercial card-sized." A card satisfying the ANSI standards could not reasonably be said to constitute "A housing."[4]

Carson's alternative proposal for construing the word "Chassis" is "structure." It is without doubt that in the context of the `232 Patent "structure" is meaningless; it does not appear in the specification of the `232 Patent and runs afoul of the several cases relied upon by Carson to argue that Telebrands' proposed constructions are indefinite. Telebrands' proposed construction for "chassis" namely, "**a frame for supporting or incorporating convenience features, including visual aid and illumination**" is derived from the specification of the `232 Patent and should be adopted by this Court.

With respect to "**carried by**," Carson's proposed construction as meaning "A part of" is inconsistent with `232 Patent specification, and Carson fails to cite any supporting extrinsic evidence. The specification uses the term "part of" in an entirely different context from that of "carried by" in the claims at issue. Telebrands' proposed meaning for "carried by" namely, "**Supported by or attached to**" is fully consistent with the claims and specification of the `232 Patent and should be adopted.

Telebrands submits that Carson's proposals and arguments are disingenuous and should be rejected.

---

[4] The specification states that the invention includes a chassis that is a frame having an opening, a lens, batteries and an electric circuit assembly. (Col. 3, lines 58-65). See also, (Col. 1, lines 52-56; Col. 2, lines 9, 14-15, 26, 39-40, 59; Col. 3, lines 19-21). ANSI compliant cards are not known or proven here to include such features.

II. **ARGUMENT**

    A. **The Claim Terms at Issue**

        1. Commercial Card-Sized

Carson's proposed construction for "commercial card-sized" namely, the ANSI standards for credit cards, is unreasonable in the context of the invention described and claimed in the `232 Patent. The `232 Patent does not mention the ANSI standards because they are not relevant to a patented device. The appropriate overall size for a "commercial card-sized" device in accordance with the invention is easily understood from the specification and claims of the `232 Patent.

It is clear that the `232 Patent specification provides flexible guidelines for the overall size of a patented device by describing "approximate" length and width dimensions (Col. 1, line18) for commercial cards such as "credit cards and debit cards" (Col. 1, line 17; Col. 5, lines 22-25), "bank cards and the like" (Col. 1, line 43-44; Col. 5, lines 27, 32), and other similar sized cards such as "phone cards" (Col. 1, line 17), "insurance cards" (Col. 1, line 18) and even "drivers' licenses" (Col. 5, line 33).

The specification then states that "it would be highly desirable to provide a device that in size is substantially equal to that of a conventional commercial card <u>and that</u> incorporates visual aid and illumination attributes." (Col. 1, lines 38-44; Emphasis added). According to the specification, the size of a commercial card that incorporates such convenience features is constrained by the space available in a wallet sleeve or the like "<u>specifically sized</u> for holding cards of this size," such as "commercial cards" (Col. 1, lines 17-23; Emphasis added), including "a bank card such as a credit card or a debit card" (Col 5, line 27), or stated differently, "<u>designed specifically to accommodate</u>

commercial cards such as bank cards and other cards such as a drivers' licenses [sic] and the like" (Col. 5, lines 28-33; Emphasis added). Such wallet sleeves or compartments have customary dimensions that are well understood by those in the relevant field of art, as shown below.

Contrary to Carson's argument, Telebrands' proposed construction is not indefinite for failing to include a numerical depth dimension. The numerical depth for a "commercial card-sized" device of this invention is clearly constrained by the space available in a wallet sleeve, designed as set forth above.

Telebrands' proposed construction for "commercial card-sized" namely, "**capable of being carried in a wallet sleeve specifically sized to hold credit cards and the like,**" is derived from the specification and is also consistent with the understanding of the customary meaning for the term "credit card size," as adopted in the relevant field of art. In this case, the relevant field of art includes the marketplace for magnifier products providing illumination aid and/or visual aid that are advertised as being "credit card sized."

Carson had no difficulty using "credit card size" to describe the size of its magnifier products having illumination and visual aids that do not satisfy ANSI standards, but which are nevertheless thin enough to fit in a wallet sleeve. Exhibits A and B hereto show that Carson's magnifier products are the size of a credit card in length and width respectively.[5] Exhibit C hereto (Exhibit 3 to Telebrands' Opening Brief) is Carson's advertisement for a package of "3 Credit Card Size Magnifiers with Super Bright LED Light." (Emphasis added). The advertisement also states that these products

---

[5] All Exhibits referred to herein are identified in the accompanying declaration of Gregory Carbo.

are "convenient wallet size" and illustrates one such product being inserted into a wallet sleeve. In Exhibit D hereto (Exhibit 4 to Telebrands' Opening Brief) Carson advertises that its "MC-99" and "MC-99C"Magnifier products are "Credit Card-Sized with Batteries," and that each "Fits in Your Wallet." Exhibit E hereto shows Carson Magnifier products placed within wallet sleeves.

Accordingly, it is disingenuous for Carson to argue that Telebrands' proposed construction for "commercial card-sized" is fatally ambiguous when Carson advertises that their non-ANSI compliant magnifier products having illumination and visual aids of the type described in the `232 Patent are "credit card sized" and fit in a wallet sleeve. It is unnecessary to refer to ANSI extrinsic evidence to interpret "commercial card-sized" because it is clear from the specification of the `232 Patent, as it is from Carson's marketing materials, that persons of ordinary skill in the relevant art would understand that the size of a "credit card-sized" magnifier is such that it fits within a wallet sleeve <u>designed specifically to accommodate commercial cards</u> such as bank cards (Col. 5, lines 25-33; Emphasis added), or <u>specifically sized</u> for holding commercial cards. (Col. 1, line 22; Emphasis added). Since the `232 Patent specification indicates that a "commercial card" can be a bank card such as a credit card, Carson's advertising confirms the very definition of "commercial card-size" that Telebrands proposes.

Others in the relevant market also advertise that their non-ANSI compliant magnifier products are "credit card sized" and fit in a wallet. Exhibit F is a website advertisement from Best Stationery & Promotion Co., Ltd for a "<u>Credit Card Size</u> Magnifier with Light." (Emphasis added). The advertisement states that the product "<u>Fits perfectly in any wallet.</u>"(Emphasis added).

Exhibit G is a website advertisement from Science eStore for a "lighted Card Magnifier." The advertisement states: "This <u>credit card sized</u> magnifier has a built in light which illuminates toward the object you are magnifying. <u>Keep it in your wallet</u> or purse and always have the extra reading power at your fingertips!" (Emphasis added).

Exhibit H is an advertisement from Pronto Innovations for a "Card Magnifier" having a "built in LED light." The advertisement states that this product is "Credit Card Size" and "easily fits into any wallet or purse."

Exhibit I is a website advertisement for a magnifying card called "Spare Spectacles." The ad states: "The most Advanced <u>Credit Card Lighted Magnifier</u> Made!" (Emphasis added), and "Emergency Eyesight <u>in Your Wallet</u>." (Emphasis added). The advertisement shows a "Spare Spectacles" magnifier card being inserted into a wallet sleeve.

Each of the foregoing magnifier products includes a lens, an LED light, a switch for the light, batteries for power, and electric circuitry. None of the foregoing products is indicated to, and would not, fully comply with ANSI standards for credit cards. Indeed, ANSI or The International Standards Organization ("ISO") standards for credit cards are unlikely to be met by a credit card size device that includes a light, a switch for the light, batteries for the light, and electric circuitry.

It is evident from the foregoing that Carson is wrong in arguing that unless ANSI standards for credit cards are met, persons skilled in this art would be unable to produce the patented device. Along with the specification of the `232 Patent, the marketplace for "credit card sized" magnifiers confirms that in the relevant field of art Telebrands' proposed construction for "commercial card-sized," namely, "**Capable of being carried**

**in a wallet sleeve specifically sized to hold credit cards and the like**" is correct and should be adopted.

Carson's argument that "commercial card-sized" must satisfy the ANSI standards for credit cards is not only inconsistent with the `232 Patent, but is also inconsistent with Carson's proposed construction for the claim term "chassis." Carson proposes that "chassis" should mean "housing." Carson has not submitted any evidence that cards complying with ANSI standards provide "A housing" for batteries, an LED light, a switch for the light and electric circuitry, as claimed in the `232 Patent. Carson's proposal of "housing" as a definition for "chassis" betrays Carson's real understanding that the ANSI standards are inappropriate for defining the term "commercial card-sized" in the context of the `232 Patent.

Carson also argues that the word "thin" used in the specification (Col. 5, line 24) to describe the depth of "chassis 12" somehow renders the `232 Patent invalid for indefiniteness. (Carson Brief, p. 14). However, invalidity is not an issue presently before this Court, and "thin" is not a word proposed for claim construction. Moreover, *Datamize, LLC v, Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005) and *Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110 (Fed. Cir. 1983) relied upon by Carson (Carson's Opening Brief, pp. 14-17) are inapposite. *Datamize, LLC* and *Caterpillar* dealt only with <u>claim terms</u>. "Thin" is <u>not</u> a claim term in the `232 Patent, is not proposed for claim construction and is not being interpreted under 35 U.S.C. § 112 ¶2.[6]

---

[6] 35 U.S.C. § 112 ¶ 2 states: "The specification shall conclude with one or more <u>claims</u> particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." (Emphasis added).

Moreover, Carson is wrong to imply that the word "thin" is ambiguous in the context of the `232 Patent. Unlike the *Caterpillar* case, the term "thin" is implicitly defined in the specification of the `232 Patent when read in context. As described above, the `232 Patent specification makes it clear that "commercial card-sized" means thin enough to fit into a sleeve "designed specifically to accommodate commercial cards." (Col. 5, lines 22-33; Emphasis added).

In *Datamize LLC* the claim term at issue was "aesthetically pleasing." This claim term was held indefinite because "the scope of claim language cannot depend solely on the unrestrained subjective opinion of a particular individual purportedly practicing the invention. (*Datamize LLC*, 417 F.3d at 1349). This is not our case. Here, the scope of "commercial card-sized" is objectively constrained in size to no more than the space available within a sleeve "specifically sized for holding" commercial cards (Col. 1, lines 17-23; Emphasis added) or "designed specifically to accommodate commercial cards such as bank cards" (Col. 5, lines 25-33; Emphasis added). Its scope is defined and does not depend on "unrestrained subjective opinion."

*Halliburton Energy Services, Inc., v. M-I LLC*, 514 F.3d 1224 (Fed. Cir. 2008) does not support Carson's argument that the term "wallet sleeve" in Telebrands' proposed construction for "commercial card-sized" is indefinite. Carson argues that there is no "definition or parameters for the size" of a wallet sleeve. (Carson Brief, p. 20). Carson is incorrect. According to the `232 Patent and Telebrands' proposed construction, the wallet sleeve must be "specifically sized to hold credit cards and the like." The necessary size of the sleeve could not be clearer. Moreover, there is no requirement that the `232 Patent provide numerical parameters for wallet sleeves, which are venerably and

indisputably well established and within the ordinary knowledge and skill of persons who design and produce such sleeves. This is quite different from *Halliburton*, in which the proposed construction for the term "fragile gel" was unlimited in scope. The court said that the proposed construction for "fragile gel" would have read on the prior art and all future improvements. Here, in contrast, Telebrands' proposed construction for "commercial card-sized" provides a distinct outer limitation in size to the space available in a wallet sleeve "<u>specifically sized</u>" to hold credit cards or be "<u>designed specifically to accommodate</u>" credit cards and the like. There is no discernible ambiguity.

      Carson's reliance on *E-PASS* is misplaced. In *E-PASS* the disputed term was "electronic multifunction card." The court determined that the patent failed to define a size limitation that was different from the ordinary meaning of "card" which, as construed, did not include a depth parameter. As with the other cases relied upon by Carson, this is not our case. Here, it is clear that "commercial card-size" does not mean full standardized dimensions for a credit card. The claims at issue recite that a chassis having, e.g., a light, a light switch, with implied circuitry, and/or a magnifying lens is "commercial card-sized." The accommodation of these other claim features by a chassis that is "commercial card-sized" suggests that the invention is not a standardized commercial card, but rather a different device. As set forth above, the specification and the claims of the `232 Patent define the scope of the term as proposed by Telebrands, and not alternate embodiments for the size of a "commercial card-sized" device.[7]

---

[7] The different embodiments described in the `232 Patent varied in the nature of the convenience features and switch circuitry. In all embodiments, the size of the patented device remains defined by the necessity of its being sized to fit within a sleeve specifically sized for holding credit cards and the like, as explained above.

Carson argues that the magnetic strip embodiment (Figs. 6-11) supports the argument that "commercial card-sized" must mean the ANSI or ISO standards. However, the specification is clear that the embodiment having a magnetic strip has the chassis 12, the lens 17, batteries 19 and electric circuitry 22 including light 30 and switch 61. (Col. 5, lines 45-67; Col 6, lines 1-43). There is nothing in the specification that suggests that the inclusion of a magnetic strip as a convenience feature must affect the size of the device described and claimed in the `232 Patent.

### 2. Chassis

Carson construes "chassis" to mean "A housing or structure." Carson argues that the Court should adopt this construction because it is purportedly the common and ordinary meaning of the term. However, Carson provides no extrinsic evidence for this proposition and overlooks that a different meaning for "chassis" is implicated by the specification of the `232 Patent. According to the specification the "chassis" is the "frame 14" (Col. 1, lines 61-62), which may receive batteries, an electric circuit including a switch and a light and/or a lens. (Col. 1, lines63-65; Col. 2, lines 46-50). Telebrands proposed construction that the claimed "chassis" is a "**frame for supporting or incorporating convenience features …**" more accurately, and in accordance with the `232 Patent, conveys the proper construction of this term.

As indicated above, Carson's proposal that "chassis" is "A housing" is not consistent with its proposal that "commercial card-sized" means compliance with ANSI standards. Cards complying with the ANSI standards are not known to "house" batteries, an electric circuit including a switch, conductors and a light, and Carson has not provided evidence to the contrary.

Carson's alternate proposal that "chassis" means "structure" is inconsistent in scope with Carson's proposal that "chassis" means "A housing," and since either term proposed by Carson must satisfy ANSI credit card standards according to Carson's proposed definition for "commercial card-sized," Carson's proposed definitions would render the claims at issue "insoluably ambiguous." *Honeywell Intern., Inc., v. Int'l Trade*, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003). Indeed, Carson's proposals for "chassis" raise the very problem dealt with in *Halliburton*, cited by Carson (Carson Opening Brief, p. 19), where the court determined that a claim is indefinite when there are no discernable boundaries to its scope. *Halliburton*, 514 F.3d 1224, 85 USPQ2d at 1661. Here, neither "housing" nor "structure" appears in the `232 Patent specification and could cover prior art as well as all future modifications without regard to the invention described in the `232 Patent. Carson's proposed alternative constructions for "chassis" should be rejected. The nature of the chassis as a frame, as proposed by Telebrands, is very well described in the specification, has been adopted by those, including Carson, in the relevant field of art and should be adopted by this Court.

### 3. Carried by

Carson proposes that the claims term "carried by" should be construed to mean "part of" because that would allegedly be its ordinary meaning. Carson provides no extrinsic evidence for this proposition, and overlooks that the `232 specification uses the phrase "part of" only to describe <u>components</u> of the electric circuit (Col. 4, lines 48-49) and <u>components</u> of the chassis. (Col. 4, lines 9, 23-24). However, the light and the switch recited in the claims at issue are not components of the chassis. Instead they are supported by or attached to the chassis. Telebrands proposed construction for "carried

by" namely, **supported by or attached to**, recognizes this distinction and should therefore be adopted by this Court.

### B. Telebrands' Amended Answers to Interrogatories

Carson whines that Telebrands served amended answers to Carson's interrogatories on April 23, 2008 identifying changes in Telebrands' proposed claim constructions. Carson's complaint is without merit. Telebrands is required by Federal Rule of Civil Procedure 26(e)(1)(A) to supplement interrogatory answers when necessary. Moreover, the Opening Briefs on claim construction due April 28, 2008 were to make the case for a party's proposed constructions, they are not considered to be reply or responsive briefs. In this case, this Court's Order of March 18, 2008 sets responsive briefs due on May 19, 2008. Carson has therefore had 26 days within which to respond to Telebrands' current proposed constructions, served on April 23, 2008 and explained in Telebrands' Opening Brief served on April 28, 2008.

## III. CONCLUSION

For the foregoing reasons, Telebrands believes that its proposed constructions should be adopted by the Court, and Carson's proposed constructions rejected.

                                Respectfully submitted,

DATED: May 19, 2008                By /s/ William E. Pelton
                                                Peter D. Murray, Esq. (PM-6912)
                                                William E. Pelton, Esq. (WP-1850)
                                                COOPER & DUNHAM LLP
                                                1185 Avenue of the Americas
                                                New York, New York
                                                Tel: (212) 278-0400
                                                Fax: (212) 391-0526

                                                *Attorneys for Defendants*
                                                *Telebrands Corp. and*
                                                *Wallet Light USA, LLC*

Claim Construction Brief        Page 12

CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of May, 2008, I electronically filed the foregoing DEFENDANTS' TELEBRANDS CORP. AND WALLET LIGHT USA, LLC RESPONSIVE CLAIM CONSTRUCTION BRIEF with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>John R. Horvack, Jr.
>Fatima Lahnin
>CARMODY & TORRANCE
>50 Leavenworth Street
>Waterbury, Connecticut 06702

/s/ William E. Pelton
William E. Pelton