**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CARSON OPTICAL, INC. | ) | CIVIL ACTION NO. |
| | ) | 07-CV-8020 (SCR) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TELEBRANDS CORPORATION, and | ) | |
| WALLET LIGHT USA, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM SUPPORTING**
**ADMISSIBILITY OF PUBLIC TRADE LITERATURE**
**WITH RESPECT TO CLAIM CONSTRUCTION**

## TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................1

II.    ARGUMENT ...........................................................................................................2

III.   CONCLUSION .........................................................................................................8

# TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Arthur A. Collins, Inc. v. N. Telecom, Ltd.*
216 F.3d 1042, 1045 (Fed. Cir. 2000)................................................................  4

*Graham v. John Deere Co.*
383 U.S. 1, 33 (1966)..........................................................................................  4

*Herman v. William Brooks Shoe Co*.
54 USPQ2d 1046, 1048 (S.D.N.Y. 2000)...........................................................  4

*Home Diagnostics, Inc. v. Lifescan, Inc.,*
381 F.3d 1352, 1358 (Fed. Cir. 2004)................................................................  4

*Markman v. Westview Instruments, Inc*.,
 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) ..................  2

*Phillips v. AWH Corp*.
4145 F.3d 1301 at 1318 (Fed. Cir. 2005)........................................................ 2,7

*Trilogy Communications, Inc. v.Times Fiber Communications, Inc.*
109 F.3d 739 (Fed. Cir. 1997)............................................................................  7

*Vitronics Corp. v. Conceptronic, Inc.*
 90 F.3d 1576, 1584 (Fed. Cir. 1996)................................................................  4


Rules

Federal Rule of Evidence 401 ............................................................................ 6

Federal Rule of Evidence 402 ............................................................................ 6

Federal Rule of Evidence Rule 801(d)(2)........................................................... 6

Federal Rule of Evidence 902(7) ....................................................................... 6

Federal Rule of Evidence 1001(4) .....................................................................7

Defendants Telebrands Corp. and Wallet Light USA, LLC (collectively "Telebrands"), through their undersigned counsel, hereby submit their Memorandum opposing plaintiff Carson Optical, Inc.'s ("Carson") assertion, appearing for the first time in Carson's Responsive Claim Construction Brief filed May 19, 2008, that Carson's trade or product literature containing admissions against interest with respect to its claim construction position is inadmissible for purposes of claim construction.[1] Defendants requested and were granted leave to submit this Memorandum at the Status Conference held May 30, 2008 in the matter identified above.

## I.      INTRODUCTION

On April 23, 2008 Telebrands served a Second Supplemental Response To Interrogatory No. 6 (Exhibit D to Carson's Responsive claim construction brief filed May 19, 2008). In that supplemental response, Telebrands advised Carson that Telebrands would rely upon "Carson's marketing and promotional materials as <u>extrinsic</u> evidence that supports defendants' construction of claim language selected for interpretation by the Court." (Emphasis added). Carson did not object to that response. In its Opening Brief on claim construction, filed April 28, 2008, Carson did not enter an objection to the admissibility of such extrinsic evidence.

For the first time, in its Response To Telebrands' Opening Claim Construction Brief filed May 19, 2008, at pages 2-3, Carson objected to Carson's trade literature as inadmissible for claim construction purposes. Carson now asserts that Telebrands improperly relied upon Carson's accused device to support defendants' claim construction positions. Carson misinterprets the purpose for which Telebrands introduced

---

[1] In their Responsive Brief on Claim Construction, defendants also introduced trade literature of third party competitors.

Carson's trade literature and ignores the relevant prior art and the pertinent rules of evidence.

## II.    ARGUMENT

In *Markman v. Westview Instruments, Inc*., 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) the Federal Circuit authorized the district courts to rely on extrinsic evidence during claim construction.  The court said that extrinsic evidence may be considered "if the court deems it helpful in determining 'the true meaning of language used in the patent claims.'" *Markman*, 52 F.3d at 980, cited by *Phillips v. AWH Corp*. 414 F.3d 1301 at 1318 (Fed. Cir. 2005).

Carson's trade literature for its card products with convenience features that are not conventional credit cards was introduced by Telebrands to show that Carson refers to such cards as "credit card size." Carson's advertising employs the previously established ordinary and customary understanding of the size of such card products as "credit card size" and thereby contradicts its litigation position that such cards must satisfy ANSI or OSI standards for conventional credit cards.  Contrary to Carson's argument, Telebrands does not use the Carson advertising to import features from the accused device into the claims at issue.

Carson further asserts that unless this court construes "commercial card-sized" to mean the size of a conventional credit card, the claim term is ambiguous. [2] There is no such ambiguity in Telebrands' proposed construction.  The ordinary and customary understanding of the size of cards with convenience features that are not conventional credit cards is established in the prior art and confirmed in the Carson trade literature at

---

[2] Telebrands did not introduce Carson's advertising materials to show, and did not attempt to show, infringement of the accused products.

issue.  Thus, such cards have been referred to as "credit card size"[3] so as "to readily fit

within a wallet"[4] or, stated differently, to have the "convenience of fit within a wallet."[5]

The lack of ambiguity in the term "commercial card-sized" with respect to cards

with convenience features and that are not conventional credit cards is further confirmed

by trade literature downloaded from the websites of third party competitors and

introduced by Telebrands as Exhibits F-I to its Responsive Claim Construction Brief.

This extrinsic material is also introduced to show that, in addition to Carson, other skilled

artisans advertising cards with convenience features have also understood and adopted

the established ordinary and customary understanding that "credit card size" is

appropriate descriptive language for such products, even though it is clear that the

products are not the size of conventional credit cards.

It is this ordinary and customary understanding of the size of cards with

convenience features that are not conventional credit cards that has been adopted and set

forth in the patent-in-suit, proposed by Telebrands as the proper construction for the term

"commercial card-sized," and utilized by purveyors of such cards in their advertising.

The foregoing extrinsic trade literature evidence would be helpful to the court and is

admissible both to rebut Carson's litigation position and to confirm a lack of ambiguity in

the language of the claims of the patent-in-suit.

If, contrary to Telebrands' position, an ambiguity is perceived in the claims that

cannot be resolved by the patent-in-suit, or its prosecution history, the Court may resort

---

[3] U.S. Patent 6,070,990, Col. 1, lines 10-11, 20, Exhibit 1.
[4] Exhibit 1, Col. 1, lines 7-8.
[5] *Id*., at Col. 1, line17.

to the extrinsic evidence offered by Telebrands in light of the relevant prior art.[6]  *Herman v. William Brooks Shoe Co*., 54 USPQ2d 1046, 1048 (S.D.N.Y. January 24, 2000).  In *Graham v. John Deere Co*., 383 U.S. 1, 33 (1966), the Supreme Court held that "Claims as allowed must be read and interpreted with reference to rejected ones and to the state of the prior art." *Id*. at 33 (Emphasis added).  The Federal Circuit has held that the prior art may be used to shed light on the customary and normal usage of claim terms in the relevant field.  *Home Diagnostics, Inc. v. Lifescan, Inc*., 381 F.3d 1352, 1358 (Fed. Cir. 2004).  In *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1584 (Fed. Cir. 1996) the Federal Circuit held that the relevant prior art shows "how a disputed term is used by those skilled in the art."

Here, the prior art has particular value in the construction of the claim terms at issue.  The prior art indicates that the inventors of the patent-in-suit together with Carson and other sellers of cards with convenience features, intended to adopt the ordinary and customary understanding in the prior art for the size of such cards even though they are not conventional credit cards. *Id*., citing *Arthur A. Collins, Inc. v. N. Telecom, Ltd.*, 216 F.3d 1042, 1045 (Fed. Cir. 2000).  Accordingly, the light shed by the prior art on the size of cards with convenience features that are not conventional credit cards is pertinent, helpful to the court and admissible with respect to construction of the disputed claim terms.

As indicated above, cards with convenience features sized to fit in a wallet, were known in the prior art as "credit card size" at least as early as 1997, even though such cards were not conventional credit cards.  For example, prior art U.S. Patent 6,070,990

---

[6] However, Telebrands' position is that the meaning of "commercial card-sized" is clear from the specification of the patent-in-suit.

("`990 Patent"), [7] which was of record in the prosecution history of the patent-in-suit, discloses "a disposable flashlight card of <u>credit card size</u>." (`990 Patent, Col. 1, line 7; Emphasis added).[8]  Significantly, the `990 Patent states that this "credit card size" flashlight card is as "close as possible in size to that of a credit card" (`990 Patent, Col. 1, lines 10-11), namely, close enough to "readily fit within a wallet" or to satisfy a "convenience of fit within a wallet." (`990 Patent, Col. 1, lines 7-8, 17).[9]

The "credit card size" flashlight of the `990 Patent is not a conventional credit card. [10]  It is "rectangular" (`990 Patent, Col. 1, line 23; Figs. 1, 2) and does not have the ANSI-required "corners rounded with a radius of 3.18 mm" that Carson proposes for the meaning of "commercial card-sized" in the claims of the patent-in-suit.[11]  Nor can the flashlight card of the `990 Patent satisfy the ANSI or OSI standards for thickness, which according to Carson is "0.76mm".[12]  The card of the `990 Patent includes an LED light with electric leads, a battery 30 (`990 Patent, Col 2, line 1; Figs. 2, 3), and an "insulation wafer 44" (`990 Patent, Col. 1 line 67; Col. 2, line 1; Figs. 2, 3), all shown in the cross section of Fig. 3. It is clear that the so-called "credit card size" card of the `990 Patent is many times thicker than a conventional credit card as defined by Carson.

Thus, according to the relevant prior art a card with convenience features that is not a conventional credit card is well established as "credit card sized," and persons of ordinary skill in the relevant field of art would find no ambiguity in the term "commercial card-sized" with respect to such a card. Moreover, the patent-in-suit is even more

---

[7] The `990 Patent was filed in the Patent Office on May 2, 1997.
[8] The `990 Patent is actually intrinsic evidence since it was of record during prosecution of the patent-in-suit.  It is Exhibit 1 hereto.
[9] This language corresponds to that in the patent-in-suit at Col. 1, lines 22, 39-44; Col. 5, lines 26-33.
[10] It does not satisfy the ANSI or OSI standards for conventional credit cards.
[11] Carson's Responsive Brief, p. 8.
[12] *Ibid*.

specific, in that it provides exemplary and approximate numerical values for length and width (Patent-in-suit, Col. 1, lines 18-19; Col. 5, lines 24-25) and states that the card must fit in a wallet sleeve or receptacle that is "<u>designed specifically</u> to accommodate commercial cards" such bank cards and other cards…" (Patent-in-suit, Col. 5, lines 30-33; Emphasis added), meaning a "bank card such as a credit card" (Patent-in-suit, Col. 5, line 27).

As indicated above, Carson's advertising material referring to the size of its card products as "credit card size" when those products are not conventional credit cards, directly contradicts its proposed construction in this lawsuit for "commercial card-sized,"[13] and contradicts the ordinary and customary understanding from the relevant prior art of the size of such cards. In light of the foregoing intrinsic and extrinsic evidence, it is clear that a person of ordinary skill would not limit "commercial card-sized" to the size of a conventional credit card and would have no trouble understanding the established size of cards with convenience features that are not conventional credit cards.

The trade literature made and used by Carson and the other sellers of cards with convenience features in the course of business are self authenticating (F.R. Evid. Rule 902(7)), relevant and admissible under Federal Evidence Rules 401 and 402 with respect to the understanding of a person of ordinary skill at the time of filing of the patent-in-suit of the meaning of a term such as "commercial card-sized" and, with respect to Carson, constitute admissible admissions against interest by a party opponent (F.R. Evid. Rule 801(d)(2)). The third party website materials are admissible duplicates under Federal

---

[13] Namely that the patented card must meet the ANSI or OSI standards for conventional credit cards.

Evidence Rule 1001(4), since downloading of such material is an "electronic re-recording" that accurately reproduces the original.

Carson's reliance on cases concerning claim construction in light of accused products is misplaced. The promotional and marketing material of Carson and others has been introduced by Telebrands only to show adoption of the ordinary and customary meaning in the prior art for the size of cards with convenience features as "credit card sized," *Phillips*, 414 F.3d at 1314, and also as a party admission against interest with respect to Carson's proffered claim construction. This evidence does not import a limitation from the accused devices into the claims at issue, but contradicts the position taken by Carson in this litigation and confirms Telebrands' position on claim construction.

Indeed, it is Carson which seeks improperly to rely upon extrinsic evidence. Carson attempts to import into and limit the claims to the ANSI or OSI standards for conventional credit cards. Carson's imported extrinsic evidence of ANSI and OSI standards for conventional credit cards improperly contradicts the intrinsic record, the claims at issue, the specification and prosecution history of the patent-in-suit, and particularly ignores the ordinary and customary meaning in the relevant field of art for the size of cards with convenience features that are not conventional credit cards. It is therefore impermissible for purposes of claim construction. *Trilogy Communications, Inc. v.Times Fiber Communications, Inc.*, 109 F.3d 739 (Fed. Cir. 1997).

III.    **CONCLUSION**

In light of the foregoing, Telebrands submits that the Exhibits of Carson's and third party advertising and promotional materials are admissible evidence.[14]  Carson's advertising <u>rebuts</u> its claim construction position in this lawsuit.  Exhibits C, D and F-I are further helpful to the Court since they are consistent with the established and customary understanding of the size of cards having convenience features that are not conventional credit cards.[15] Telebrands Exhibits also confirm that the inventors intended such interpretation; they are consistent with the specification of the patent-in-suit and are admissible under the relevant rules.

DATED: June 6, 2008                        Respectfully submitted,

                                            /s/ William E. Pelton
                                           Peter D. Murray, Esq. (PM-6912)
                                           William E. Pelton, Esq. (WP-1850)
                                           COOPER & DUNHAM LLP
                                           1185 Avenue of the Americas
                                           New York, New York
                                           Tel: (212) 278-0400
                                           Fax: (212) 391-0526

                                           Attorneys for Defendants

---

[14] Exhibits C, D and F-I are attached to Telebrands' Responsive Claim Construction Brief.
[15] Telebrands' Exhibit E shows that Carson's card product with convenience features actually fits within a wallet sleeve, as advertised by Carson.

8

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of June, 2008, I electronically filed the foregoing DEFENDANTS' MEMORANDUM SUPPORTING ADMISSIBILITY OF PUBLIC TRADE LITERATURE WITH RESPECT TO CLAIM CONSTRUCTION with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>John R. Horvack, Jr.
>Fatima Lahnin
>CARMODY & TORRANCE
>50 Leavenworth Street
>Waterbury, Connecticut 06702

>/s/ William E. Pelton
>William E. Pelton

9